NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

OCT 30 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PETER MCNEFF,

       Plaintiff - Appellant,

  v.

PLEASANTON POLICE
DEPARTMENT; DAVID SWING,
Chief; LARRY COX; BRIAN
NOLAN; CITY OF PLEASANTON,

       Defendants - Appellees.

No. 24-4651

D.C. No.
3:23-cv-00106-AMO

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Araceli Martinez-Olguin, District Judge, Presiding

Argued and Submitted October 9, 2025
Resubmitted October 23, 2025
San Francisco, California

Before: S.R. THOMAS, NGUYEN, and BRESS, Circuit Judges.

Pleasanton Police Department ("PPD") Officer Peter McNeff appeals the

district court's dismissal of his First Amendment retaliation claim against Police

---

     *     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Chief David Swing.[1]  We have jurisdiction under 28 U.S.C. § 1291.  Reviewing de novo, *see Adams v. County of Sacramento*, 143 F.4th 1027, 1031 (9th Cir. 2025), we reverse and remand.

A government employee claiming retaliation for the exercise of his First Amendment rights must show, among other things, that his protected, private speech "was a substantial or motivating factor in the adverse employment action." *Id.* at 1033 (quoting *Barone v. City of Springfield*, 902 F.3d 1091, 1098 (9th Cir. 2018)).  "[I]t must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).  Motive can be shown "with either direct or circumstantial evidence and involves questions of fact that normally should be left for trial." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) (citation omitted).

Qualified immunity, when raised at the motion to dismiss stage, warrants dismissal unless the plaintiff: (1) pleads facts showing that the government official violated a constitutional right; and (2) meets his "burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct."

---

[1] McNeff waived any challenge to the dismissal of his claims against the other defendants.

*Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) (quoting *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991)).

1. The district court analyzed only "McNeff's attendance at the rally" as a causal factor, but McNeff alleges that Chief Swing "also violated [his] First Amendment rights by trying to fire him for comments he made on social media." Swing does not dispute that McNeff's social media posts were a causal factor in the decision to terminate McNeff's employment—that was the PPD's stated reason. Therefore, McNeff adequately alleged causation to the extent his claim is based on the social media posts.

2. McNeff also adequately alleged that his rally attendance was a causal factor in the adverse employment actions. Chief Swing placed McNeff on administrative leave just a few days after learning that McNeff attended the political rally but more than six years after McNeff made the Facebook posts that purportedly prompted the action. *See Ulrich*, 308 F.3d at 980 (citing "proximity in time between the protected speech and the alleged retaliation" as circumstantial evidence of causation (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002))). During McNeff's pre-employment screening, he disclosed his Facebook account to the PPD's investigator, who "did not find any of [the] postings objectionable." That McNeff was hired despite the posts at issue is additional

3                                                          24-4651

"evidence that the reasons proffered by the employer for the adverse employment action were false and pretextual." *Id.*

The PPD's "expressed opposition to the speech" further supports causation. *Id.* According to the second amended complaint, Chief Swing and the rest of "the liberal PPD leadership" were allegedly engaged in "a concerted effort . . . to rid the police department of officers who hold conservative political views." In a memo to Swing, Sergeant Shuffield falsely accused McNeff of being a member of a violent group responsible for a riot in Washington, D.C., despite conducting no investigation.

Lastly, the manner in which Chief Swing conducted the investigation supports McNeff's allegation that the investigation into his social media posts was a pretext "to find something to use to fire" him for his political views. Although McNeff had a "stellar" employment record, Swing commenced the investigation immediately after receiving a single, anonymous complaint about McNeff's rally attendance and three of McNeff's pre-employment Facebook posts. The PPD then spent two months searching through McNeff's Facebook posts without disclosing the nature of the investigation to him. Even after it emerged from the investigation that the posts had not been disruptive and that no one inside or outside the PPD was even aware of them prior to the rally, Swing still fired McNeff.

24-4651

3.  The district court erred in concluding that the anonymous complaint against McNeff was "another rationale" for the adverse employment actions that "dooms his claim."  A government defendant's claim to have acted with a non-retaliatory motive is an affirmative defense that "[o]rdinarily . . . may not be raised by motion to dismiss."  *Boquist v. Courtney*, 32 F.4th 764, 774, 784 (9th Cir. 2022) (quoting *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)).  McNeff's acknowledgement that Swing "initiated the adverse actions against him following a complaint about his social media conduct" is not a "concession" that Swing "took . . . action against him based on violations of City and PPD policies."  On the contrary, McNeff alleged that the investigation "was sparked entirely by [his] participation in protected political activity" and "conservative political beliefs" and that Swing's purported concern about the Facebook posts was "[t]o disguise [his] animus."

Moreover, it is not enough for the government actor to show he had "an alternate basis for taking the challenged action."  "The government is barred from taking actions 'designed to retaliate against and chill political expression,' even when that action could be taken lawfully in the absence of such improper motivation."  *Boquist*, 32 F.4th at 785 (citation omitted) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).  The more stringent standard from *Nieves*, cited by the district court, applies to retaliatory arrest claims, which involve

"complex causal inquiries" regarding "whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct." 587 U.S. at 402. "[I]n the public employment context," "establishing the causal connection between a defendant's animus and a plaintiff's [discharge]" can be "straightforward." *Id.* at 399. At the motion to dismiss stage, it is premature to conclude whether Swing would have taken the adverse actions even in the absence of the allegedly protected activity. *See Boquist*, 32 F.4th at 775, 785.

\*     \*     \*

Because McNeff adequately alleged the violation of a First Amendment right, we reverse and remand for further proceedings.

**REVERSED and REMANDED.**